**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Senior Judge Christine M. Arguello**

Civil Action No. 21-cv-02085-CMA-SKC

VYANET OPERATING GROUP, INC.,

      Plaintiff,

v.

FREDERICK J. MAURICE, and
CHRISTOPHER A. HEATH,

      Defendants.

---

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

This matter is before the Court on (1) Defendants Frederick J. Maurice and Christopher A. Heath's Motion for Summary Judgment (Doc. # 64) and (2) Plaintiff Vyanet Operating Group, Inc.'s ("Vyanet") Motion for Partial Summary Judgment on its Second Claim for Relief and Defendants' Defenses Based Upon the Economic Loss Rule, the 120-Day Reconciliation Provision of the Purchase Agreement, and Vyanet's Due Diligence (Doc. # 65). For the following reasons, the Court denies Defendants' Motion, grants in part and denies in part Plaintiff's Motion, and enters summary judgment in favor of Plaintiff and against Defendants on Plaintiff's second claim for breach of contract and Defendants' economic loss rule defense. In addition, the Court

addresses the parties' motions for leave to restrict access to summary judgment exhibits. (Doc. ## 70, 83.)

## I.     **BACKGROUND**[1]

This case arises from Vyanet's acquisition of Mountain Acquisition Company, LLC ("MAC" or "Company") from Defendants, the former majority owners. Vyanet and MAC are in the business of providing monitoring services and maintaining security system devices, such as burglar and fire alarms. On November 27, 2017, Vyanet and Defendants signed an LLC Membership Purchase Agreement ("Agreement") through which Vyanet agreed to purchase 100% of the ownership units in MAC from Defendants and other minority owners. (Doc. # 64-1 at 2.)[2] Vyanet and Defendants were also parties to two other relevant agreements: the First Addendum to the Agreement ("First Addendum") dated February 1, 2019, and the Second Addendum to the Agreement ("Second Addendum") dated February 4, 2019. (*Id.* at 48–55.)

## A.     THE AGREEMENT AND ADDENDUMS

The Agreement provides that closing would be based upon an "estimated total Purchase Price" of $21 million dollars. (*Id.* at 2.) However, the Agreement anticipated that the estimated purchase price would be adjusted to reflect the actual purchase price after the closing date. (*Id.*) The parties agreed that the final purchase price for all

---

[1] The Court draws the following facts from the parties' Motions and attachments thereto. The facts are undisputed unless otherwise indicated.

[2] Because the various exhibits and appendices provided by the parties for summary judgment briefing have different page numbering systems, the Court cites to the docket number (*e.g.*, Doc. # 64-1) and the page number applied by the court docketing system in blue in the header of each document (*e.g.*, Doc. # 64-1 at 14).

membership units would be calculated by multiplying the amount of MAC's Qualified Recurring Monthly Revenue ("QRMR") by 48.75. (*Id.* at 2–3.) The Agreement defines QRMR, in part, as "the sum to be derived by the Company from all charges which would be payable to the Company by its customers with accounts under contract for alarm monitoring services." (*Id.* at 3.)

To reflect the expected price adjustment after closing, Section 1.6 of the Agreement, titled "Purchase Price Adjustment," provides that within 120 days after the closing date, "Buyer shall deliver to Administrative Sellers and Minority Sellers a statement (the "Final Purchase Price Statement") setting forth Buyer's calculation of the actual Purchase Price."[3] (*Id.* at 4.) If the parties were to disagree as to the final purchase price, the Agreement sets out a procedure for resolving such dispute. (*Id.* at 4–5.) In the absence of any dispute, the Agreement provides that the estimated purchase price should be adjusted to equal the final purchase price. (*Id.* at 5.) In addition, the Agreement includes an "Attrition Guaranty" through which the final purchase price could be adjusted again by calculating QRMR twelve months after closing ("guarantee period"). (*Id.*) However, the multiplier for QRMR for the guarantee period is reduced by half to 24.375. (*Id.*) Effectively, the Agreement allows Vyanet to recover 100% of the value of any accounts cancelled prior to closing via the purchase price adjustment in Section 1.6 and 50% of the value of any cancelled accounts during the twelve months after closing via the attrition guaranty in Section 1.7. (*Id.*)

---

[3] The Agreement referred to Defendants as the "Administrative Sellers" and to Vyanet as "Buyer." (Doc. # 64-1 at 2.)

The Agreement also sets forth several obligations of the parties relevant to the instant lawsuit. Section 2, titled "Representations and Warranties of the Administrative Sellers and the Company," states that "[a]s a material inducement to the Buyer to enter into this Agreement . . ., the Administrative Sellers and the Company, each jointly and severally, make the following representations and warranties to the Buyer." (*Id.* at 6.) These representations and warranties include:

> **2.8 Absence of Certain Changes.** Except as contemplated or permitted by this Agreement or as described on Schedule 2.8, since the date of the Current Balance Sheet there has not been:
>
> > (a) Any Material Adverse Change in the business, financial condition, operations, assets, or prospects of the Company;
> >
> > (b) Any damage, destruction, or loss, whether covered by insurance or not, that would have a Material Adverse Effect on the properties or business of the Company . . . .

(*Id.* at 8.) The Agreement defines "Material Adverse Effect" as "a material adverse effect on the business, results of operations, financial position, assets, or prospects of the Company, which will in any event include any adverse effect on the members' equity, assets, revenue, or net income of the Company in excess of $20,000." (*Id.* at 6.) It defines "Material Adverse Change" as "any change that has resulted, will result, or is likely to result from a Material Adverse Effect." (*Id.*) Defendants promised to notify Vyanet promptly of any material change before closing. (*Id.* at 14.)

Defendants also warranted and represented that, aside from "liabilities and obligations incurred in the ordinary course of business" and liabilities and obligations already disclosed, "neither the Company nor any of the property of the Company is subject to any material liability or obligation" to Defendants' knowledge. (*Id.* at 8.)

4

Similarly, Defendants agreed that Vyanet had been provided "a complete and accurate list of each contract, agreement, instrument, lease, and commitment to which the Company is a party," subject to certain specifications, and that the Company was not in default under any contracts. (*Id.* at 10.) Defendants also promised that "[w]ithout the Buyer's prior written consent, the Company will not sell, transfer, or encumber any of its assets or make any commitments relating to such assets, property, or business, except in the ordinary course of business." (*Id.* at 15.) They warranted that "the Company does not have outstanding and has not agreed, orally or in writing . . . to issue any options or rights to purchase or otherwise to acquire any membership interest." (*Id.* at 6.)

The Agreement further provides that Vyanet would conduct due diligence as a condition precedent before closing. (*Id.* at 18–19.) Section 7.6 states:

> Buyer shall have completed and be satisfied in its sole discretion with its due diligence investigation of the Company. The Company and Administrative Sellers agree to fully cooperate with such investigation by Buyer or its representatives, agents, employees, or third parties. Such investigation shall include but not be limited to:
>
> (a)    The Company's Financial Statements and supporting books and records.
> (b)    The Company's corporate books and records.
> (c)    The Company's tax returns.
> (d)    Interview of key managers or employees of the Company.

(*Id.* at 19.)

In the First Addendum dated February 1, 2019, the parties agreed to an additional stipulated attrition adjustment that entitled Vyanet to a purchase price reduction of $163,062. (*Id.* at 48.) The stated purpose of the First Addendum was "to compensate Buyer for the difference in purchase price calculations" in connection with

the Company's separate agreement to sell its membership interests in Western Security, LLC to Timothy E. Stanley. (*Id.*) The First Addendum provides that this attrition adjustment "shall be in addition to any Purchase Price readjustment that either party may be entitled to under the Agreement, including Sections 1.6 or 1.7." (*Id.*) It further states that "[t]he stipulated attrition adjustment set forth herein shall take place contemporaneously with the Purchase Price reconciliation as forth [sic] in Section 1.6 of the Agreement." (*Id.*) In the Second Addendum, dated February 4, 2019, the parties agreed that the effective closing date shall be treated as February 1, 2019. (*Id.* at 52.) They also agreed that any representations and warranties made in Sections 2 and 3 of the Agreement were true and enforceable as of the date of the Second Addendum. (*Id.*)

## B.   THE CAMP FIRE

The parties signed the Agreement on November 27, 2017, and the effective closing date was February 1, 2019. Prior to closing, in November 2018, the Camp Fire began in Northern California. The central dispute in this case arises from the Camp Fire and its effect on associated accounts.

On November 13, 2018, MAC employee Robert "Bud" Jones sent an email to Defendants in which he provided an update on the Camp Fire and its potential impact on the Company. (Doc. # 65-3 at 217–18.) Mr. Jones, who was the general manager of the Company's Chico, California branch, explained that information was still coming in about the effects of the fire and that 236 accounts in Paradise and Magalia, California had been "inactivated" in the interim. (*Id.*) He stated that the Company was "utilizing a User Defined Field to keep track of Camp Fire affected accounts" that would allow him

to "run a report for active RMR exposure on those accounts," but he would not cancel any accounts until receiving confirmation from clients. (*Id.*) Based on the inactivated accounts, Mr. Jones estimated that the Camp Fire would affect "between $5k and $9k of RMR."[4] (*Id.*)

It is undisputed that Defendants received the above email and did not notify Vyanet of the Camp Fire or associated inactivation of accounts. (Doc. # 65 at 6; Doc. # 65-4 at 5; Doc. # 65-5 at 8–9.) However, Defendants assert that "the impact of the Camp Fire was unknown for months after the fire" because it was unclear whether inactivated accounts would be cancelled or reactivated, depending on the extent of property damage and/or the customer's ability to rebuild. (Doc. # 64 at 20.) Defendants contend that any Camp Fire cancellations received prior to January 31, 2019, were entered into the MAC Sedona database in the normal course of business before closing. (Doc. # 82 at 12.) Moreover, Defendants argue that neither Defendant Heath nor Maurice had actual knowledge of any specific customer cancellations that occurred because of the Camp Fire. (*Id.* at 20; Doc. # 82-1 at 4.)

The parties dispute whether the Company's books and records were adequately updated before closing to reflect the cancellation or inactivation of any Camp Fire affected accounts. *See* (Doc. # 64-1 at 434–35; Doc. # 65-6 at 15; Doc. # 82-1 at 5.) Mr.

---

[4] Because the Agreement provides that MAC's purchase price would be determined by multiplying QRMR by 48.75, Vyanet asserts that the anticipated transaction loss due to the Camp Fire (based on Mr. Jones's estimation in this email) was between $243,750 and $438,750. (Doc. # 65 at 6.) Defendants dispute that this calculation is a correct estimate of any transaction loss because the November 13, 2018 email could only speculate as to the actual number of accounts that would be cancelled, versus accounts that would be reactivated. (Doc. # 64 at 19–20.)

Jones testified at his deposition that all cancellations that MAC received prior to January 31, 2019, were entered into the MAC Sedona database before closing. (Doc. # 64-1 at 434–35.) Similarly, in his sworn Declaration, Defendant Heath stated that customers in the Camp Fire area who gave notice of cancellation of their alarm accounts prior to February 1, 2019, had their accounts cancelled in the MAC Sedona Office software as part of the normal course of business and were therefore part of the books and records turned over to Vyanet at closing. (Doc. # 82-1 at 5.) Vyanet, however, asserts that Defendants "failed to update the schedules provided to Vyanet prior to closing" (Doc. # 65-6 at 15) and "did not inactivate or fully cancel the accounts in Sedona" (Doc. # 79 at 9). Vyanet states that because Defendants failed to disclose the cancelled accounts or update MAC's records, Vyanet was unable to determine that some or all of the accounts were cancelled until it sent bills to customers and did not receive payment in response. (Doc. # 65-6 at 14.)

The parties also dispute whether Vyanet had knowledge of the Camp Fire and/or access to all information relating to Camp Fire affected accounts prior to closing as part of its due diligence investigation. As contemplated by the Agreement, Vyanet had from November 17, 2017, until actual closing on February 4, 2019, to conduct due diligence. Vyanet engaged Benchmark Performance Partners LP ("Benchmark") as its due diligence agent in the transaction for the acquisition of MAC. (Doc. # 80 at 27.) Among other factual disputes relating to Vyanet's access to information before closing, the parties disagree whether Ryan Matkin, owner and operator of Benchmark, was granted and received login credentials for MAC's Sedona database. *Compare* (Doc. # 64-1 at

768–69), *with* (*id.* at 692), *and* (Doc. # 80 at 28.) Similarly, the parties dispute whether Vyanet and Benchmark Partners had access to the "user defined field" that Mr. Jones used to track the Camp Fire affected accounts. (Doc. # 79 at 3–4; Doc. # 80 at 28.)

Yet another factual dispute is whether Vyanet had sufficient access to information regarding Camp Fire affected accounts in the 120 days after closing to request a purchase price adjustment pursuant to Section 1.6 of the Agreement. Defendants argue that after closing, Vyanet had exclusive access to all of MAC's books and records. (Doc. # 82 at 12.) Moreover, Vyanet employed former MAC employees, including Mr. Jones, who "played a part in creating and maintaining MAC's books and records and had the deepest understanding thereof." (*Id.*) These employees included Choua Thao, who prepared and sent to Mr. Jones a detailed analysis of MAC accounts that she determined had been cancelled because of the Camp Fire on April 2, 2019, well after Vyanet acquired the Company. (Doc. # 64-1 at 64, 777.) Vyanet asserts that Defendants' conduct, and the way that MAC recorded inactivations and cancellations, prevented Vyanet from being able to seek a purchase price adjustment within 120 days. (Doc. # 79 at 9–10; Doc. # 80 at 5.)

## C.   OTHER LIABILITIES

Vyanet contends, and Defendants dispute, that Defendants also failed to disclose liabilities and contracts in violation of the Agreement, including but not limited to:

    a.   That MAC owed $25,000 to Plante Moran for review of 2018 financial statements. This amount had been outstanding since July of 2018.

     b.  That MAC was in default under its contract with Decypher and owed $22,411.14 for services provided between October 15, 2017 and January 15, 2019.

     c.  That MAC was in default under its contract with KeepYourIP, and owed $4,749.00 for IP addresses since February of 2016.

     d.  That MAC was in default of, and owed penalties under its lease agreement for property in Silverthorne, Colorado for unpaid rent from November, 2018.

     e.  That MAC had a lease agreement with American Tower for a three-year term, at a rate of $2,000 per month subject to automatic renewal unless cancelled.

(Doc. # 65 at 7) (citations omitted). The parties disagree whether these contracts and liabilities were incurred in the ordinary course of business and therefore excluded from the Agreement's disclosure requirements. *See* (Doc. # 64-1 at 425–26; Doc. # 80 at 5; Doc. # 82 at 13–14.) Defendants further assert that some of these liabilities were incurred by Vyanet after closing or were never incurred at all. (Doc. # 82 at 13; Doc. # 64-1 at 489.)

Vyanet claims that Defendants also breached the Agreement by executing a Redemption and Option Agreement with Tim Stanley ("Western Stock Redemption") on October 24, 2018. (Doc. # 65 at 8.) Defendants vehemently dispute this claim because "Vyanet's owners were directly involved in the negotiations and decision to enter into the [Western Stock Redemption] with Mr. Stanley prior to its execution on October 24, 2018." (Doc. # 82 at 13.) Defendants point to several emails in which Tracy Jones and Byron Warner of Vyanet discussed the Western Stock Redemption with Defendants and suggested edits to the related document. (Doc. # 82 at 13; Doc. # 84; 84-1; 84-2.) When Defendant Heath informed Mr. Warner that Mr. Stanley executed and delivered the

Western Stock Redemption agreement, Mr. Warner responded, "That's great news Chris." (Doc. # 84-2 at 2.) Vyanet asserts that its knowledge of the Western Stock Redemption is "immaterial" because the Agreement, which warrants that the Company will not and has not issued any options or rights to purchase membership units, includes no exception for options known to Vyanet. (Doc. # 90 at 9–10.)

**D.    PURCHASE PRICE ADJUSTMENT**

Because the effective closing date was February 1, 2019, Vyanet had until June 1, 2019, to prepare the Final Purchase Price Statement for a purchase price adjustment under Section 1.6 of the Agreement. It is undisputed that Vyanet did not prepare a Final Purchase Price Statement or seek a purchase price adjustment pursuant to Section 1.6 within the 120 days provided by the Agreement. (Doc. # 79 at 4; Doc. # 82 at 6.) It is also undisputed that Defendants never made the $163,062 stipulated price adjustment set forth in the First Addendum. (Doc. # 65 at 9; Doc. # 65-3 at 2.)

On October 5, 2020, approximately 613 days after closing, Vyanet sent Defendants a letter with the subject line "Mountain Acquisition Company, LLC Purchase Price Reconciliation." (Doc. # 64 at 6; Doc. # 64-1 at 219.) In the letter, Vyanet explained that it was submitting a Final Purchase Price Statement pursuant to Section 1.6 of the Agreement and that it was entitled to a total reduction of the purchase price in the amount of $1,252,807.22. (Doc. # 64-1 at 219–221.) Vyanet cited cancelled accounts due to the Camp Fire and several undisclosed liabilities as the bases for the price reduction. (*Id.*) On October 15, 2020, Defendants responded and rejected Vyanet's Final Purchase Price Statement and price reduction on the grounds that

Vyanet's letter was well outside the 120-day period outlined in the Agreement and any purchase price adjustment was therefore time barred. (Doc. # 80 at 20.)

**E.      PROCEDURAL HISTORY**

Vyanet filed the instant lawsuit in state district court in Denver County on June 30, 2021 (Doc. # 4), and Defendants removed the case to this Court on August 2, 2021 (Doc. # 1). In its Amended Complaint (Doc. # 24), Vyanet asserts the following claims: (1) breach of contract with respect to the Agreement; (2) breach of contract with respect to the First Addendum; (3) false representation; (4) fraudulent nondisclosure or concealment; and (5) unjust enrichment (brought in the alternative to breach of contract claims).

Defendants filed a Motion to Dismiss Vyanet's claims on September 3, 2021 (Doc. # 20), which the Court referred to United States Magistrate Judge S. Kato Crews (Doc. # 21). In part, Defendants moved to dismiss Vyanet's fraud claims on the grounds that such claims were barred by Colorado's economic loss rule. On September 2, 2022, this Court issued an Order Affirming in Part and Rejecting in Part Recommendation of United States Magistrate Judge (Doc. # 78) wherein the Court rejected Defendants' economic loss rule argument based on new precedent from the Colorado Supreme Court and the Tenth Circuit. The Court denied the Motion to Dismiss in its entirety.

On July 29, 2022, Defendants filed their Motion for Summary Judgment on all of Vyanet's claims (Doc. # 64). The same day, Vyanet filed its Motion for Partial Summary Judgment on its second claim for breach of the First Addendum and on three of

Defendants' affirmative defenses (Doc. # 65). Both motions are fully briefed and ripe for review. (Doc. ## 66, 79, 80, 82, 84, 90, 92.)

## II.   <u>MOTIONS FOR SUMMARY JUDGMENT</u>

## A.   LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *See id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *Id.* In attempting to meet this standard, a movant who does not bear the ultimate burden of persuasion at trial does not need to disprove the other party's claim; rather, the movant need simply point out to the Court a lack of evidence for the other party on an essential element of that party's claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

Once the movant has met its initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Id.* Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. Stated differently, the party must provide "significantly probative evidence" that would support a verdict in his favor. *Jaramillo v. Adams Cnty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671.

## B.  SECOND CLAIM FOR RELIEF FOR BREACH OF THE FIRST ADDENDUM

Because both parties move for summary judgment on Vyanet's second claim for relief relating to breach of the First Addendum, the Court will address that claim first.

In Colorado, a party attempting to recover on a claim for breach of contract must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Contract interpretation is a question of law for the Court to decide. *Ad Two, Inc. v. City & Cnty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000). The primary goal of interpreting a contract is to determine and give effect to the intent of the parties. *Id.* In construing a contract, courts "interpret the contract in its entirety, seeking to harmonize and give effect to all of its provisions so

that none will be rendered meaningless." *People ex rel. Rein v. Jacobs*, 465 P.3d 1, 11 (Colo. 2020).

Vyanet argues that it is entitled to summary judgment on its second claim for relief because the material facts supporting the elements of its claim are undisputed. (Doc. # 65 at 11.) Specifically, Vyanet contends (1) a contract existed because Vyanet and Defendants executed the First Addendum and the Agreement; (2) Vyanet performed its obligations under the Agreement and the First Addendum because it paid the purchase price for the Company; (3) Defendants failed to perform their obligations under the First Addendum because it is undisputed that Defendants did not make the $163,062 QRMR attrition adjustment set forth therein; and (4) Vyanet suffered damages in the amount of that unpaid adjustment.

In response, Defendants focus on the second element and argue that Vyanet failed to perform pursuant to the First Addendum because Vyanet did not timely prepare a Final Purchase Price Statement to seek a purchase price reconciliation pursuant to Section 1.6 of the Agreement. (Doc. # 82 at 14–15.) In other words, Defendants contend that Vyanet lost any right to the $163,062 adjustment when it failed to seek a purchase price adjustment because the First Addendum provides that the QRMR attrition adjustment was to occur "contemporaneously with the Purchase Price reconciliation" as set forth in Section 1.6 of the Agreement. Because Defendants base their argument against summary judgment on this interpretation of the First Addendum, the issue is a legal one of contract interpretation.

The Court must begin with the language of the First Addendum, which sets forth the "Additional Stipulated Attrition Adjustment." It states:

> **2.1 Adjustment for Western QRMR.** Subject to the terms and conditions set forth in the Agreement, in addition to any attrition or QRMR Adjustment Amount set forth in the Agreement, the Buyer shall be entitled to any additional QRMR Adjustment equal to the attrition resulting from a QRMR reduction of $3,623.60 times a multiple of 45 for a total reduction of $163,062.00.

(Doc. # 64-1 at 48.) The First Addendum further provides that the adjustment "shall be in addition to any Purchase Price adjustment that either party may be entitled to under the Agreement, including Sections 1.6 or 1.7." (*Id.*) Regarding "Adjustment Time," the First Addendum states that the stipulated attrition adjustment "shall take place contemporaneously with the Purchase Price reconciliation" as set forth in Section 1.6 of the Agreement. (*Id.*) As previously discussed, Section 1.6 states that the purchase price reconciliation shall occur within 120 days of closing. (*Id.* at 4.)

The Court agrees with Vyanet that nothing in the First Addendum makes the $163,062 QRMR adjustment contingent upon Vyanet requesting or receiving a purchase price adjustment pursuant to Section 1.6. Rather, the First Addendum clearly states that the QRMR adjustment "shall be **in addition to** any Purchase Price adjustment that either party may be entitled to under the Agreement," including under Sections 1.6 and 1.7. (*Id.* at 48) (emphasis added). Based on this language, the clear intent of the parties in executing the First Addendum was to agree to a purchase price reduction separate from any purchase price reconciliation contemplated by the Agreement. *See People ex rel. Rein*, 465 P.3d at 11. The rationale for this price adjustment is stated clearly within the First Addendum: As a result of the Company's

sale of its ownership interest in Western Security to Mr. Stanley, "[t]he sale price set forth in the Western Agreement is based on a smaller multiple of QRMR and the parties are therefore entering into this Addendum as a necessary part of the Closing of the Agreement to compensate Buyer for the difference in purchase price calculations." (Doc. # 64-1 at 48.)

Although the Court acknowledges that the First Addendum states that the $163,062 adjustment "shall take place **contemporaneously** with the Purchase Price reconciliation" in Section 1.6 (*id.*) (emphasis added), the Court cannot construe this provision to mean that the purchase price reconciliation is a condition precedent to Vyanet being entitled to the amount agreed upon in the First Addendum. To the contrary, the First Addendum makes clear that Vyanet "shall be entitled" to the $163,062 adjustment "in addition to" any adjustment that may take place pursuant to the Agreement. (*Id.*) The Court agrees with Vyanet that the instruction that the $163,062 adjustment take place "contemporaneously" with the Section 1.6 purchase price reconciliation, when read harmoniously with the rest of the First Addendum and the Agreement, means that the $163,062 adjustment should occur in the same timeframe as the Section 1.6 reconciliation (within 120 days of closing). Because Vyanet was entitled to this amount, and because it is undisputed that Defendants failed to pay Vyanet the amount within 120 days of closing, the Court finds that Vyanet has established that Defendants breached the First Addendum.

Aside from their contract interpretation argument, Defendants do not identify any genuine dispute of material fact with respect to any of the elements of Vyanet's second

claim for relief. *See* (Doc. # 82 at 14–15.) Viewing the undisputed material facts in the light most favorable to Defendants, the Court finds that Vyanet has established (1) a contract existed because Vyanet and Defendants executed the First Addendum and the Agreement; (2) Vyanet performed its obligations under the Agreement and the First Addendum because it paid the purchase price for the Company; (3) Defendants failed to perform their obligations under the First Addendum because it is undisputed that Defendants did not make the $163,062 QRMR attrition adjustment to compensate Vyanet for the sale of Western Security; and (4) Vyanet suffered damages in the amount of that unpaid adjustment. Accordingly, the Court concludes that Vyanet is entitled to summary judgment on its claim that Defendants breached the First Addendum. The Court therefore grants Vyanet's Motion for Partial Summary Judgment (Doc. # 65) and denies Defendant's Motion for Summary Judgment (Doc. # 64) with respect to Vyanet's second claim for relief.

## C.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Next, the Court turns to Defendants' Motion for Summary Judgment as to the remainder of Vyanet's claims.

### 1.    First Claim for Breach of the Agreement

In its first claim for relief, Vyanet alleges that Defendants breached the Agreement by failing to comply with contractual warranties, failing to provide required information in a fashion that Vyanet was able to prepare a Final Purchase Price Statement within 120 days, and rejecting Vyanet's Final Purchase Price Statement in October 2020. (Doc. # 24 at 23.)

Defendants argue that they are entitled to summary judgment on Vyanet's breach of contract claim because Vyanet breached the purchase price adjustment provision in Section 1.6 of the Agreement by failing to timely prepare a Final Purchase Price Statement and by requesting a purchase price reduction approximately 493 days after the 120-day deadline mandated by the Agreement. (Doc. # 64 at 4–7.) "Whether a breach of contract is material, and therefore excuses further performance by the other party, is a question of fact." *Kaiser v. Market Square Discount Liquors, Inc.*, 992 P.2d 636, 640 (Colo. App. 1999). In determining whether a breach is material "courts consider the importance or seriousness of the breach and the likelihood that the complaining party has received or will receive substantial performance under the contract." *Stan Clauson Assocs. v. Coleman Bros. Constr., LLC*, 297 P.3d 1042, 1045 (Colo. App. 2013). Further, Defendants contend that Vyanet has no evidence showing Defendants' alleged failure to comply with contractual warranties. (Doc. # 64 at 7–9.)

The Court finds that there are genuine disputes of material fact that preclude summary judgment on Vyanet's first breach of contract claim and on Defendants' defense that Vyanet's failure to timely request a purchase price adjustment pursuant to Section 1.6 of the Agreement is a material breach. These genuine disputes of material fact include, but are not limited to:

- whether Vyanet's delay in requesting a purchase price reduction was substantially justified by Defendants' alleged misconduct in failing to disclose the Camp Fire and associated account cancellations and/or failing to

adequately update and maintain the Company's records on account inactivations and cancellations;

- whether Defendants first breached the Agreement by failing to disclose existing liabilities incurred outside of the ordinary course of business and/or contracts in default; and

- whether Vyanet had sufficient information to timely request a purchase price adjustment pursuant to Section 1.6 in light of Defendants' alleged misconduct of tracking inactivations in a user-defined field that Vyanet did not have access to, failing to disclose account cancellations, and failing to update records.

Because of these disputes of material fact, summary judgment is not appropriate on Vyanet's first claim for breach of the Agreement.

    2.    <u>False Representation and Fraudulent Concealment Claims</u>

To prevail on a false representation claim, a plaintiff must establish: (1) that the defendant made a false representation of a material fact; (2) that the one making the representation knew it was false; (3) that the person to whom the representation was made was ignorant of its falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the reliance resulted in damage to the plaintiff. *Bristol Bay Prods., LLC v. Lampack*, 312 P.3d 1155, 1160 (Colo. 2013). The final element requires the plaintiff to prove "actual reliance, the reasonableness of that reliance, and that the plaintiff's reliance caused its damages." *Id.* The elements of a fraudulent nondisclosure or concealment claim are substantially similar, except that a plaintiff must

prove a material nondisclosed or concealed fact rather than a "representation." *See, e.g.*, *Colo. Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9, 16 n.5 (Colo. App. 2010); *Nielson v. Scott*, 53 P.3d 777, 779 (Colo. App. 2002).

Defendants first argue that Vyanet's fraud claims are barred by Colorado's economic loss rule. (Doc. # 64 at 13–15.) The Court incorporates herein its analysis of Vyanet's fraud claims and the economic loss rule from its September 2, 2022 Order Affirming in Part and Rejecting in Part Recommendation of United States Magistrate Judge (Doc. # 78), wherein the Court rejected Defendants' same argument and denied Defendants' Motion to Dismiss Vyanet's fraud claims on the basis of the economic loss rule. *See Bermel v. BlueRadios, Inc.*, 440 P.3d 1150, 1154 n.6, 1155 (Colo. 2019) (observing that since adopting the economic loss rule, the Colorado Supreme Court has "applied it only to bar common law tort claims of negligence or negligent misrepresentation" and noting that "the economic loss rule generally should not be available to shield intentional tortfeasors from liability for misconduct that happens to also breach a contractual obligation"); *In re Bloom*, 2022 WL 2679049, at *4 (10th Cir. July 12, 2022) (analyzing *Bermel* and concluding that "common law fraud and fraudulent concealment claims are both tort claims that arise independent of a contract, so they would not be barred by the economic loss rule"). For the same reasons, the Court rejects Defendants' argument that they are entitled to summary judgment on Vyanet's false representation and fraudulent concealment claims on the basis of Colorado's economic loss rule.

Next, Defendants argue that Vyanet cannot show essential elements of its fraud claims, including Vyanet's own justifiable reliance and Defendants' knowledge of the falsity of any representation or any concealed facts.[5] (Doc. # 64 at 15–20.) The Court finds that there are genuine disputes of material fact that preclude summary judgment on Vyanet's false representation and fraudulent nondisclosure claims, including but not limited to:

- whether Vyanet had equal access to information regarding the inactivation and cancellation of Camp Fire affected accounts prior to closing;

- whether Mr. Matkin of Benchmark was provided with login credentials for MAC's systems and/or the extent to which Mr. Matkin relied upon reports provided by Defendant Heath in performing due diligence and calculating MAC's RMR;

- whether Defendants knew of cancellations from the Camp Fire that resulted in a material change of the Company's revenue in excess of $20,000 prior to closing;

- whether Defendants provided an incomplete list of the Company's contracts and liabilities and whether Defendants knew as such; and

---

[5] Defendants also briefly argue that Vyanet's fraud claims should fail because Vyanet allegedly "destroyed key evidence relating to Defendants' disclosures during due diligence" after Vyanet acquired MAC's information, resources, email servers, and other systems. (Doc. # 64 at 12.) Defendants do not explain with specificity what, if any, evidence was destroyed that defeats Vyanet's claims, and Defendants do not provide any authority for their position that this alleged destruction of evidence entitles them to summary judgment. In the absence of any further information or developed argument, the Court declines to address the issue for purposes of resolving the instant Motions.

- whether Defendants knew the Company was in default of certain contracts.

In light of the fact that there are significant material facts in dispute with respect to Vyanet's false representation and fraudulent nondisclosure claims, the Court finds that summary judgment on those claims is not appropriate.

    3.   <u>Unjust Enrichment Claim</u>

"Unjust enrichment is a quasi-contractual, equitable remedy designed to undo a benefit conferred on one party at the unfair expense of another party." *Pulte Home Corp., Inc. v. Countryside Cmty. Ass'n, Inc.*, 382 P.3d 821, 833 (Colo. 2016). To prevail on a claim for unjust enrichment, a plaintiff must prove that "(1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Id.* (quoting *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008)). However, a plaintiff "generally cannot recover for unjust enrichment . . . where there is an express contract addressing the subject of the alleged obligation to pay." *Id.* Colorado courts have recognized two exceptions to this rule: "[A] party may still recover for unjust enrichment when (1) the express contract fails or is rescinded, or (2) the claim covers matters that are outside of or arose after the contract." *Id.* (citations omitted).

Defendants assert that Vyanet's unjust enrichment claim "is based entirely on the purchase price" as set forth in the Agreement. (Doc. # 64 at 10–11.) Further, Defendants note that both parties have expressly affirmed the Agreement in this case. (Doc. # 92 at 7.) In light of these facts, and the well-established principle that a party cannot recover for unjust enrichment where there is a remedy available based on the

express contract, Defendants contend that Vyanet cannot continue to pursue the equitable remedy of unjust enrichment even in the alternative. (Doc. # 64 at 10–11.)

In response, Vyanet asserts that its claim may proceed pursuant to the first exception to the rule, which applies if the "express contract failed or was rescinded." *Interbank Invs. v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003). Vyanet contends that this exception applies because Defendants (1) "argue Vyanet breached Section 1.6" and (2) "have not filed an answer and may raise other defenses seeking to void or rescind the Agreement." (Doc. # 79 at 13.) Vyanet's second point is now moot: Defendants filed their Answer (Doc. # 91) on September 16, 2022, and Defendants have expressly affirmed the Agreement and First Addendum. *See* (Doc. # 92 at 7.)  Vyanet's first point, however, has some merit.

Recently, a division of the Colorado Court of Appeals addressed this exception and noted that the phrase "when the contract fails" may "encompass other situations" than contracts that are unenforceable. *Gravina Siding & Windows Co. v. Gravina*, 516 P.3d 37, 46 (Colo. App. 2022.) The court considered whether a party who breaches a contract, and therefore has no remedy under the contract, may nevertheless recover under a theory of unjust enrichment. *Id.* It cited the Restatement for the principle that a "performing party whose material breach prevents a recovery on the contract has a claim in restitution against the recipient of performance, as necessary to prevent unjust enrichment." *Id.* (quoting Restatement (Third) of Restitution and Unjust Enrichment § 36 (Am. Law. Inst. 2011)); *see also New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 118 (2d Cir. 2006) ("[W]here a valid agreement exists between

24

the parties, an action in quantum meruit to prevent unjust enrichment ordinarily is not available. However, a plaintiff whose breach was not willful and deliberate may, in some instances, recover under an unjust enrichment theory for the benefit conferred upon the non-breaching party minus damages to the non-breaching party.") After reviewing these and several other authorities, the Colorado Court of Appeals concluded "that where a contract exists, absent a provision explicitly addressing remedies with respect to the default at issue, a party that breaches the contract may nonetheless recover for the other party's unjust enrichment." *Gravina*, 516 P.3d at 47.

In light of this precedent, and considering that Defendants argue that Vyanet breached the Agreement by failing to comply with Section 1.6, the Court finds that it would be inappropriate to grant summary judgment on Vyanet's unjust enrichment claim at this juncture. For purposes of this stage of the proceedings, Vyanet has sufficiently demonstrated a triable issue as to whether Vyanet may recover for unjust enrichment if Defendants prevail on their defense that Vyanet materially breached the Agreement. The Court therefore denies Defendants' Motion for Summary Judgment (Doc. # 64) with respect to Vyanet's fifth claim for unjust enrichment.

## D.   VYANET'S MOTION FOR SUMMARY JUDGMENT ON THREE DEFENSES

Vyanet moves for summary judgment on Defendants' defenses that (1) the economic loss rule bars Vyanet's claims for false representation and fraudulent nondisclosure; (2) Vyanet is not entitled to recover on its claims for breach of contract because it did not seek a purchase price adjustment under Section 1.6 of the Agreement; and (3) Vyanet failed to conduct adequate due diligence and is therefore

barred from recovering on its claims. (Doc. # 65.) For reasons stated above, the Court rejects Defendants' argument that the economic loss rule bars Vyanet's fraud claims and finds that summary judgment in favor of Vyanet is appropriate on Defendants' economic loss rule defense.

The Court finds that there are genuine disputes of material fact that preclude summary judgment on Defendants' other two defenses that Vyanet is not entitled to recover on its claims because it failed to seek a purchase price adjustment under Section 1.6 and that Vyanet failed to conduct adequate due diligence. These disputes of material fact include, but are not limited to:

- whether Vyanet was justified in failing to timely seek a purchase price adjustment pursuant to Section 1.6 because of Defendants' alleged misconduct in failing to update MAC's records to reflect account cancellations and inactivations due to the Camp Fire;

- whether Vyanet and its due diligence agent, Benchmark, were granted login credentials to MAC's databases; and

- whether Vyanet and Benchmark substantially relied on reports and data provided by Defendants in conducting due diligence.

Given that there are genuine disputes of material fact, summary judgment is inappropriate as to the matters of Vyanet's alleged breach of Section 1.6 and Vyanet's alleged failure to conduct due diligence.

### III.   <u>MOTIONS FOR LEAVE TO RESTRICT ACCESS</u>

Lastly, the Court will address the parties' dispute over whether public access should be restricted for several exhibits attached to the motions for summary judgment and subsequent briefing. (Doc. # 70; Doc. # 83.)

"All courts have supervisory powers over their own records and files. Thus a court, in its discretion, may seal documents if the public's right of access is outweighed by competing interests." *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985) (internal citations and quotation marks omitted). At the same time, there is a well-established presumption against restricting access to court documents. *See, e.g.*, *United States v. McVeigh*, 119 F.3d 806, 811 (10th Cir. 1997). In exercising its discretion, the court "weigh[s] the interests of the public, which are presumptively paramount, against those advanced by the parties." *United States v. Dillard*, 795 F.3d 1191, 1205 (10th Cir. 2015) (quoting *Crystal Grower's Corp. v. Dobbins*, 616 F.2d 458, 461 (10th Cir. 1980)). "The party seeking to overcome the presumption of public access to the documents bears the burden of showing some significant interest that outweighs the presumption." *Id.* (quoting *Helm v. Kansas*, 656 F.3d 1277, 1292 (10th Cir. 2011)). It is insufficient for a party to rely on a "generalized allusion to confidential information" or to merely refer to the existence of a protective order to meet this burden. *JetAway Aviation, LLC v. Bd. of Cnty. Comm'rs of Cnty. of Montrose*, 754 F.3d 824, 826 (10th Cir. 2014).

To this end, Local Civil Rule 7.2(a) provides that documents filed with this District are presumptively available to the public, and the burden is on the party seeking

restriction to justify such relief. D.C.COLO.LCivR 7.2(a). The rule requires a party

seeking to restrict access to (1) identify the document or proceeding for which restriction

is sought; (2) address the interest to be protected and why such interest outweighs the

presumption of public access; (3) identify a clearly defined and serious injury that would

result if access is not restricted; (4) explain why no alternative to restriction is

practicable or why only restriction will adequately protect the interest in question; and

(5) identify the level of restriction sought. D.C.COLO.LCivR 7.2(c).

## A.   PLAINTIFF'S OPPOSED MOTION TO FILE EXHIBITS TO DEFENDANTS' AND VYANET'S MOTIONS FOR SUMMARY JUDGMENT UNDER RESTRICTED ACCESS (Doc. # 70)

Vyanet seeks to restrict public access to Exhibits 3D, 3G, and 7A to Vyanet's

Motion for Summary Judgment (Doc. # 65-3 at 43–174, 219–25; Doc. # 65-8) and Tab

21 of the Appendix to Defendants' Motion for Summary Judgment (Doc. # 64-1 at 777–

851). According to Vyanet, Exhibit 3D (Schedules for the Purchase Agreement), Exhibit

3G (a reconciliation spreadsheet containing account information), and Exhibit 7A (notes

pertaining to specific customers reflecting when those customers cancelled their

accounts) should be restricted because they "contain closely-controlled customer and

proprietary business information about Vyanet's clients and former clients, pricing

structure, and business model." (Doc. # 70 at 4.) Further, Vyanet asserts that Tab 21 of

Defendants' Appendix should be restricted because it constitutes an email from Choua

Thao with the subject "Camp Fire Cancellations List" that includes "an attached list of

cancelled and inactivated accounts that includes account numbers, information

regarding the account holders and locations, and pricing information." (*Id.* at 2.)

Defendants oppose Vyanet's request because (1) Vyanet originally filed its exhibits as unrestricted and permitted Defendants to do the same, so the exhibits have already been made public and any claim to confidentiality is therefore waived; (2) Vyanet misunderstands and has failed to comply with the requirements of Rule 7.2 in order to restrict access to the documents; and (3) Vyanet has failed to meet its burden of demonstrating that restriction is necessary. (Doc. # 81.)

As an initial matter, the Court agrees with Defendants that Vyanet arguably waived any right to restriction by filing Exhibits 3D, 3G, and 7A without restriction and by informing defense counsel that Tab 21 could be filed unrestricted as well. *See Gunn v. WCA Logistics, LLC*, No. 13-cv-02197-WJM-MEH, 2016 WL 7868827, at *1 (D. Colo. Jan. 12, 2016) (denying motion for leave to restrict in part because the party seeking restriction failed to file the document as a restricted document and thus waived confidentiality). In *Gunn*, United States Magistrate Judge Michael E. Hegarty reasoned that "[b]ecause Defendants failed to avail themselves of the protections provided by the District's local rules in filing Exhibit N, any claim to confidentiality has been waived. The cat has already been let out of the bag." *Id.* The same logic applies here. Not only did Vyanet fail to file Exhibits 3D, 3G, and 7A under restriction for its Motion for Summary Judgment, Vyanet also failed to file the same exhibits (and others it asserts should be restricted) under restriction with its Motion for Leave to Amend Complaint (Doc. # 62) on July 22, 2022.[6] Vyanet has therefore twice made public what it now seeks to seal, and

---

[6] Vyanet filed Exhibit 3D (Schedules to Membership Unit Purchase Agreement) (Doc. # 65-3 at 43–174) as Exhibit 8 (Doc. # 62-8) to Vyanet's Motion to Amend. Similarly, Exhibit 3G (Reconciliation Spreadsheet) (Doc. # 65-3 at 219–25) is filed as Exhibit 10 (Doc. # 62-10) to the

the Court is mindful that matters already made public generally will not be sealed after the fact. *See Flohrs v. Eli Lilly & Co.*, No. 12-2439-SAC, 2013 WL 4773515, at *2 (D. Kan. Sept. 4, 2013) ("Ex-post facto sealing should not generally be permitted."); *see also Gambale v. Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004) ("[H]owever confidential it may have been beforehand, subsequent to publication it was confidential no longer. . . . We simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again.").

Vyanet asserts that its failure to file the exhibits under restriction is excusable because Vyanet "promptly informed the clerk that the exhibits had been filed unrestricted in error and the Court clerk placed them under restricted access until Vyanet was able to file its motions." (Doc. # 88 at 2.) However, Vyanet provides no indication as to how long the exhibits remained public. Moreover, from the Court's review of the docket, it does not appear that all of the exhibits that Vyanet seeks to restrict are currently restricted at all.

Aside from the issue of Vyanet's failure to file the exhibits under restricted access, Vyanet also seems to fundamentally misunderstand several aspects of its burden under Rule 7.2(c). For example, the Rule requires Vyanet, as the party seeking restriction, to "explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question (e.g. redaction, summarization, restricted access to exhibits or portions of exhibits)." D.C.COLO.LCivR 7.2(c)(4). Vyanet

---

Motion to Amend and Exhibit 7A (Doc. # 65-8) is filed as Exhibit 9 (Doc. # 62-9) to the Motion to Amend. The Court is aware that Vyanet also filed a motion seeking to restrict access to exhibits attached to the Motion to Amend, which is pending before Judge Crews. (Doc. # 68.)

first suggests that "Defense counsel has not identified any alternatives to restricted access that would balance the parties' interests." (Doc. # 70 at 3.) This argument is unavailing because the burden is on Vyanet, not Defendants, to explain why no alternative to restriction is practicable. Next, Vyanet argues that "[m]easures short of restricting access will not adequately balance Vyanet's confidentiality concerns with the need to present the information contained in the exhibits" because "summarization or partial restriction will not enable the Court to view and understand the evidence supporting Vyanet's Summary Judgment Motion." (*Id.* at 5.) This argument is equally flawed because the Court has full access to all unredacted exhibits regardless of whether the documents are restricted or redacted for public filing. *See* D.C.COLO.LCivR 7.2(b) (describing levels of restrictions).

Nevertheless, the Court has carefully reviewed the subject exhibits and agrees with Vyanet that they contain information about Vyanet's customers and former customers which, if publicly available, could cause harm to those third parties by revealing their confidential information. Public disclosure of these exhibits could also harm Vyanet by allowing competitors to gain a competitive advantage. Specifically, Exhibit 3D (Doc. # 65-3 at 43–174) includes a list of accounts featuring customer names, types, and pricing data. Exhibit 3G also includes a list of customer names affected by the Camp Fire, though it does not contain any other identifying customer information. (*Id.* at 219–25.) Exhibit 7A includes notes pertaining to specific customers reflecting when those customers cancelled their accounts. (Doc. # 65-8.) Finally, Tab 21 of Defendants' Appendix includes a full list of cancelled and inactivated accounts which

includes account numbers, customer names and addresses, and pricing information. (Doc. # 64-1 at 777–851.)

Because these documents run the risk of revealing Vyanet's and third parties' confidential information, the Court finds in its discretion that restriction is appropriate despite the deficiencies in Vyanet's motion and initial filing. *See Deschenes Consulting LLC v. Nu Life Market LLC*, No. 19-cv-03465-RM-SKC, 2020 WL 2747702, at *4–5 (D. Colo. May 27, 2020) (restricting documents that were available publicly for four months because the documents revealed customer identities); *All Plastic, Inc. v. SamDan LLC*, No. 20-cv-01318-NYW, 2021 WL 5066920 (D. Colo. Sept. 27, 2021) (restricting exhibits that "reveal customer information, including addresses"). Having reviewed the exhibits carefully, the Court it satisfied that the exhibits may be redacted to remove customer names, addresses, and pricing information while still being made available to the public as exhibits relevant to the summary judgment motion. *See Richardson v. Gallagher*, No. 10-cv-02097-MSK-CBS, 2012 WL 4359116, at *9 (D. Colo. Sept. 24, 2012) (noting that "there is a heightened public interest in being able to review those facts and materials upon which the Court decided contested issues").

Accordingly, Vyanet shall have ten (10) days from the date of this Order to file redacted versions of Exhibits 3D, 3G, and 7A. If Vyanet fails to do so, the exhibits will be made publicly available. Because Tab 21 of Defendants' Appendix contains customer names and addresses, the Court orders that Defendants file a redacted version of Tab 21 within ten days as well.

**B.     DEFENDANTS' MOTION TO RESTRICT ACCESS (Doc. # 83)**

Defendants' Motion to Restrict Access pertains to Exhibits 1-4 in Defendants'

Appendix to their Response to Vyanet's Motion for Summary Judgment, which

Defendants filed under restriction on September 2, 2022. (Docs. ## 84, 84-1, 84-2, &

84-3.) Although Defendants' Motion is titled "Motion to Restrict Access" (Doc. # 83),

Defendants do not actually seek to restrict access to Exhibits 1-4. Instead, Defendants

explain that they filed the exhibits under restriction to comply with the Stipulated

Protective Order entered in this case, which provides:

> If a document that is marked CONFIDENTIAL pursuant to this Stipulated
> Protective Order is filed with the Court, the party filing such document
> shall file it under restricted access; however, the party who designated the
> document as CONFIDENTIAL is responsible for moving under
> D.C.COLO.LCivR 7.2 to keep the document restricted from public access.

(Doc. # 36 at ¶ 8.) Because Vyanet marked the respective documents that comprise the

exhibits "confidential," Defendants assert that it is Vyanet's responsibility to file a motion

to restrict access to the exhibits pursuant to Rule 7.2. (Doc. # 83 at 2.)

Defendants indicate that Vyanet does not oppose the Motion. (*Id.* at 1.)

Accordingly, the Court will allow Vyanet ten (10) days from the date of this Order to file

a motion to restrict access pursuant to D.C.COLO.LCivR 7.2; otherwise, the exhibits will

be made available to the public.

**C.     COMPLIANCE WITH LOCAL RULES AND PRACTICE STANDARDS**

Lastly, the Court warns both parties to thoroughly read and comply with both the

local rules and this Court's practice standards with respect to public access to

documents, *see* D.C.COLO.LCivR 7.2; Civ. Practice Standard 7.2, and the format of

documents presented for filing, *see* Civ. Practice Standard 10.1(a) (requiring Arial 12-point font) & (b)(3) (preferring citations to Westlaw). Future filings that do not conform to these standards may result in an order striking the noncompliant filing without substantive consideration. *See* Civ. Practice Standard 1.1(c).

### IV.  <u>CONCLUSION</u>

For the foregoing reasons, it is ORDERED as follows:

- Defendants' Motion for Summary Judgment (Doc. # 64) is DENIED;

- Plaintiff's Motion for Partial Summary Judgment (Doc. # 65) is GRANTED IN PART and DENIED IN PART. It is GRANTED as to Plaintiff's second claim for relief for breach of the First Addendum and as to Defendants' economic loss rule defense. It is DENIED in all other respects.

- Accordingly, it is ORDERED that summary judgment shall enter in favor of Plaintiff and against Defendant on Plaintiff's second claim for relief for breach of the First Addendum in the amount of $163,062.00, with pre-judgment interest at the rate of 8% per annum compounded annually beginning July 1, 2019, to the date of this order pursuant to Colo. Rev. Stat. § 5-12-102(1)(a).

- It is FURTHER ORDERED that Plaintiff's Opposed Motion to File Exhibits to Defendants' and Vyanet's Motions for Summary Judgment Under Restricted Access (Doc. # 70) is GRANTED IN PART and DENIED IN PART.

  - The Clerk is directed to maintain Level 1 Restriction for Exhibits 3D, 3G, and 7A to Plaintiff's Motion for Summary Judgment (Doc. # 65-3; Doc. # 65-8). Plaintiff shall have ten (10) days from the date of this

order to file redacted versions of the exhibits, otherwise the Clerk will be directed to lift that restriction.

- o The Clerk is also directed to maintain Level 1 Restriction for Defendants' Appendix to their Motion for Summary Judgment (Doc. # 64-1). Defendants are ordered to file a version of the Appendix with Tab 21 (Doc. # 64-1 at 777–851) redacted to conceal customer names, addresses, prices, and other confidential information within ten (10) days of the date of this Order.

- It is FURTHER ORDERED that Defendants' Motion to Restrict Access (Doc. # 83) is GRANTED.

  - o The Clerk is directed to maintain Level 1 Restriction for Respondents' Appendix (Docs. ## 84, 84-1, 84-2, & 84-3).

  - o Plaintiff shall have ten (10) days to file a motion for leave to restrict pursuant to D.C.COLO.LCivR 7.2, otherwise the Clerk will be directed to lift the restriction.

DATED:  February 1, 2023

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge