IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No.: 1:21-cv-02085-CMA-SKC

VYANET OPERATING GROUP, INC.,

      Plaintiff,

v.

FREDERICK J. MAURICE and
CHRISTOPHER A. HEATH,

      Defendants.

---

ORDER DENYING PLAINTIFF'S
MOTION TO STRIKE AFFIRMATIVE EXPERT OPINIONS IMPROPERLY
DISCLOSED AS REBUTTAL EXPERT DISCLOSURES [DKT. 49]

---

The disclosure of expert witnesses is governed by Fed. R. Civ. P. 26(a)(2). The

Rule requires a party to "disclose to the other parties the identity of any witness it

may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705."

The party who bears the burden of proof on an issue first designates their affirmative

expert opinions, while the other party may designate rebuttal expert opinions to

contradict or refute those affirmative opinions. Fed. R. Civ. P. 26(a)(2)(D).

Plaintiff timely disclosed one retained expert witness under Rule 26(a)(2)(B),

and three non-retained expert witnesses, collectively, under Rule 26(a)(2)(C). [Dkt.

49-1.] Plaintiff's description of the opinions of the non-retained experts is somewhat

vague or broad. This is because it lumps the three non-retained experts together

1

without discerning which witness will testify to which opinions. And nearly all of their opinions are couched in terms of what these witnesses "may" testify about. [*See generally* Dkt. 49-2 pp. 2-11 (emphasis added).] *Compare* Fed. R. Civ. P. 26(a)(2)(C)(ii) (the disclosure must state "a summary of the facts and opinions to which the witness is *expected* to testify") (emphasis added). The Court mentions this only because the broad or vague nature of Plaintiff's expert witness disclosures perhaps adds to the disconnect between the parties on the present Motion.

Defendants subsequently timely disclosed four rebuttal expert witnesses. Plaintiff moves to strike these rebuttal experts arguing they express affirmative opinions that do not solely contradict or rebut the opinions of Plaintiff's experts, and these experts offer new theories. Plaintiff's Motion to Strike [Dkt. 49] these rebuttal expert disclosures is before this Court on referral. After carefully considering the Motion and related briefing, the expert reports, and applicable law, the Court DENIES the Motion for the following reasons:

## ANALYSIS

Rebuttal experts are those "intended solely to contradict or rebut evidence on the same subject matter identified" by affirmative experts. Fed. R. Civ. P. 26(a)(2)(D)(ii); *E.E.O.C. v. JBS USA, LLC*, No. 10–cv–02103–PAB–KLM, 2013 WL 3302429, at * 6 (D. Colo. July 1, 2013). Rebuttal experts cannot "put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts." *Spring Creek Expl. & Prod. Co., LLC, v. Hess Bakken Inv. II,*

*LLC*, No. 14-cv-00134-PAB-KMT, 2016 WL 1597529, at *3 (D. Colo. April 21, 2016) (cleaned up). Individuals designated only as rebuttal experts may present limited testimony, may not testify as part of a party's case-in-chief, and cannot testify "unless and until" the testimony they were designated to rebut is given at trial. *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 636 (D. Haw. 2008); *see also Johnson v. Grays Harbor Cmty. Hosp.*, No. C06–5502BHS, 2007 WL 4510313, at *2 (W.D. Wash. Dec. 18, 2007) (rebuttal expert witnesses would "be permitted only to offer rebuttal testimony at trial").

The Motion lays out the specific rebuttal opinions Plaintiff contends are not proper rebuttal. Defendants' Response takes each of those rebuttal opinions and identifies the affirmative opinions they rebut. The Court juxtaposes those opinions in the following table:[1]

| Plaintiff's Affirmative Opinion | Defendants' Rebuttal Opinion |
|---|---|
| Plaintiff's experts opine Plaintiff was not required to comply with the provision in the Agreement setting forth the 120-day deadline for the purchase price adjustment. | Defendants' experts opine that Section 1.6 of the Purchase Agreement required Plaintiff to make a purchase price adjustment 120 days after the date of closing. |
| Plaintiff's experts opine Plaintiff was unable to or prevented from making the purchase price adjustment within 120 days of the closing date. | Defendants' experts opine Plaintiff was able to make such an adjustment. |

---

[1] Defendants' Response [Dkt. 54] provided pinpoint citations to the record (namely the exhibits/expert reports attached to the Motion [Dkt. 49]) for each opinion listed in the Table. The Court reviewed those pinpoint citations. They are omitted from the Table for readability and to save space.

| | |
|---|---|
| Plaintiff's experts opine that purchase price adjustment provisions do not create a remedy for unexpected or surprising events related to the purchase price. | Defendants' experts opine that Section 1.6 of the Purchase Agreement was the exclusive remedy for issues related to the purchase price. |
| Plaintiff's experts opine Plaintiff sent a timely letter requesting a purchase price adjustment in October 2020. | Defendants' experts opine that notices seeking extension of the measure date and a purchase price adjustment were late. |
| Plaintiff's experts opine the purpose of the due diligence was to analyze the data provided on contracts and payment information and not to determine whether the Camp Fire would cause cancellations. Plaintiff's experts also provide the due diligence report and opine that the due diligence agent used "best efforts and professional judgment." | Defendants' experts opine, among other opinions on due diligence, that Plaintiff's due diligence obligations under the Purchase Agreement and the due diligence conducted by Benchmark Partners was inadequate. |
| Plaintiff's experts opine Plaintiff and its representatives lacked knowledge about the Camp Fire. | Defendants' experts opine Plaintiff should have been aware of the Camp Fire and its location. |
| Plaintiff's experts opine Defendants should have disclosed the Camp Fire and its impact or potential impact and that MAC's books and records included accounts that were cancelled due to the Camp Fire as of the closing date. | Defendants' experts opine there was no need for Defendants to speculate about the potential effects of the Camp Fire or to report cancellations due to the Camp Fire to Plaintiff so long as they were "recorded in the records" of MAC before closing. |
| Plaintiff's experts opine that its ability to meet the 120-day purchase price adjustment deadline depended on it being able to identify and parse out inactive and/or cancelled accounts, including those related to the Camp Fire. | Defendants' experts opine Plaintiff had 120 days from closing to ascertain cancellations due to the Camp Fire and seek an adjustment for them. |

| Plaintiff's experts opine Plaintiff was unaware of the Camp Fire or its potential effects on MAC's business and that "Defendants are trying to use the 120-day provision for adjusting the purchase price . . . to retain compensation . . . that they were not entitled to retain." | Defendants' experts opine that because "[Plaintiff] was fully aware of the 2018 Camp Fire and proceeded with the transaction anyway" it effectively relied "on the 120-day adjustment period to address any lost accounts and associated RMR [recurring monthly revenue]." |
|---|---|
| Plaintiff's experts opine that the effect of the Camp Fire on the transaction was significant. | Defendants' experts opine that the effect of the Camp Fire on the transaction was immaterial. |
| Plaintiff's experts opine Defendants failed to disclose certain information to Plaintiff and its due diligence agent, Benchmark Partners; Plaintiff's experts also opine on, and specifically list, liabilities that Defendants failed to disclose and representations and warranties that were false. | Defendants' experts opine Defendants disclosed all information Plaintiff and Benchmark Partners requested, made no misrepresentations, that Defendants' warranties were true and accurate, and that Defendants did not fail to disclose liabilities. |
| Plaintiff's experts opine Defendants failed to reduce the purchase price under the First Addendum. | Defendants' experts opine Plaintiff waived its right to payment under the First Addendum of the Purchase Agreement because it failed to seek a purchase price adjustment within 120 days. |
| Plaintiff's experts opine Plaintiff was prevented from "accurately calculating" the purchase price adjustment within 120 days. | Defendants' experts opine that Plaintiff could have put forth "any plausible figure" within 120 days to trigger a review. |
| Plaintiff's experts opine Plaintiff acted reasonably. | Defendants' experts opine Plaintiff was allegedly negligent. |
| Plaintiff's experts opine Plaintiff's letter requesting a purchase price adjustment in October 2020 was timely and that it was prevented from making the calculation by the 120-day deadline. | Defendants' experts opine the absence of a written agreement extending the 120-day period made Plaintiff's request for a purchase price adjustment untimely. |

| | |
|---|---|
| Plaintiff's experts opine Plaintiff "did not learn of accounts cancelled . . . due to the Camp Fire until long after the closing" and that "in many cases, cancellation was not received for several months after the closing." | Defendants' experts opine that notices of cancellation not received by the Measure Date could not "be used as an adjustment to the Purchase Price." |
| Plaintiff's experts opine Plaintiff's October 2020 request for a purchase price adjustment was timely. Plaintiff's experts also opine "[t]he Purchase Price Holdback is usually for a twelve-month period from the Closing Date and is used for any initial Purchase Price Adjustments or attrition guaranties defined in the Purchase and Sale Agreement." | Defendants' experts opine Plaintiff did not seek a timely purchase price adjustment under Section 1.7 [the attrition guaranty] of the Purchase Agreement. |
| Plaintiff's experts opine on the obligations under the Agreement and the due diligence process and its purpose thereunder. | Defendants' experts opine Plaintiff decision to go forward with the transaction was "conclusive proof" Plaintiff was satisfied with its due diligence pursuant to the terms of the Agreement. |
| Plaintiff's experts opine that "the 12-month reconciliation spreadsheet reflects the QRMR of MAC as of January 31, 2019, immediately before the closing date [and] that the data used to determine the estimated purchase price prior to closing was from November of 2018, which was reasonable for determining the estimated purchase price." | Defendants' experts opine that "[b]ecause [Plaintiff] closed on the transaction knowing that the results of critical data testing and analysis was 4 months old, this is conclusive that [Plaintiff] would rely on the 120 day adjustment period to calculate the Final Purchase Price and the one year adjustment period to calculate any claim to be made under the attrition guarantee." |

Rule 26(a)(2)(D)(ii) makes clear:

> a rebuttal expert's testimony must relate to and rebut evidence or testimony on the same *subject matter* identified by another party under Rule 26(a)(2)(B) or (C). Such evidence is not tied to any particular witness; it is tied to whether the party with the affirmative burden has presented evidence and/or testimony from a duly disclosed expert on the same subject matter as that which will be rebutted by the disclosed rebuttal expert.

*Bleck v. City of Alamosa*, Colo., No. 10–cv–03177–REB–KMT, 2012 WL 695138, at *4 (D. Colo. March 5, 2012). The Advisory Committee Notes to Rule 26 do not explain what "same subject matter" means; but "expert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal or reply reports." *Spring Creek Expl. & Prod. Co.,* 2016 WL 1597529, at *2 (citing *Boles v. United States,* No. 1:13-cv-489, 2015 WL 1508857, at *2 (M.D.N.C. Apr. 1, 2015).

Comparing Defendants' rebuttal opinions to Plaintiff's affirmative opinions, as done above, it is clear those opinions directly contradict and rebut Plaintiff's affirmative opinions.[2] In this way Defendants experts were properly and timely disclosed as rebuttal experts. To the extent those rebuttal experts go further and discuss certain facts and evidence in support of their opinions, that too is not

---

[2] In its Reply, Plaintiff did not address Defendants' point-by-point comparison of the competing opinions, but instead defaulted to its overall argument that the rebuttal opinions are really affirmative opinions. But the side-by-side comparison makes plain the direct contradictions in the opinions on the same subject matter, as contemplated by Rule 26(a)(2)(D)(ii).

improper. Rebuttal reports by their very nature require a showing of facts and evidence which support the contrary opinions. *Spring Creek Expl. & Prod. Co.*, 2016 WL 1597529, at *3 (citing *Bone Care Int'l, LLC v. Pentech Pharmaceuticals, Inc.*, 2010 WL 3894444, at *15 (N.D. Ill. Sept. 30, 2010)). They "may introduce new methods of analysis, if presented for the purpose of contradicting or rebutting evidence on the same subject matter." *United States v. CEMEX, Inc.*, No. 09-cv-00019-MSK-MEH, 2011 WL 13068613, at *1 n.1 (D. Colo. Aug. 11, 2011). "Moreover, courts have also held that a rebuttal report may consider additional data not utilized in the expert report, again, if related to the same subject matter." *Id.*

Here, Plaintiff's expert witness disclosures describe a litany of opinions its non-retained experts "may" offer at trial. To the extent those opinions actually are offered at trial, Defendants' rebuttal expert opinions directly contradict and rebut those opinions. The key, however, is that Plaintiff's affirmative opinions actually be elicited in the course of its case-in-chief. Since Defendants only disclosed rebuttal experts—they disclosed no affirmative experts nor sought an extension of the deadline to do so—any affirmative opinions they might endeavor to offer may be properly objected to at trial for the presiding judge's consideration.

For these reasons, the Motion is DENIED.

DATED: February 9, 2023                    BY THE COURT:

S. Kato Crews
United States Magistrate Judge

8