IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Christine M. Arguello

Civil Action No. 21-cv-02085-CMA-SKC

VYANET OPERATING GROUP, INC.,

    Plaintiff,

v.

FREDERICK J. MAURICE, and
CHRISTOPHER A. HEATH,

    Defendants.

## ORDER DENYING DEFENDANTS' RULE 702 MOTION

This matter is before the Court on Defendants Frederick J. Maurice and Christopher A. Heath's Rule 702 Motion to Exclude Testimony and Opinions of Tracy Jones and Byron Warner. (Doc. # 86.) For the following reasons, the Motion is denied.

### I.    BACKGROUND

The Court detailed the factual background of this case in its February 1, 2023 Order Denying Defendants' Motion for Summary Judgment and Granting in Part and Denying in Part Plaintiff's Motion for Partial Summary Judgment. (Doc. # 100.) The Court incorporates that background by reference and reiterates only the facts necessary to address Defendants' Motion.

This case arises from Plaintiff Vyanet Operating Group, Inc.'s ("Vyanet") acquisition of Mountain Acquisition Company, LLC ("MAC") from Defendants, the former

majority owners. Both Vyanet and MAC are in the business of maintaining and providing monitoring services for security and alarm systems. In 2017, the parties executed an LLC Membership Purchase Agreement ("Agreement") through which Vyanet agreed to purchase 100% of the ownership units in MAC from Defendants and other minority owners. (Doc. # 64-1 at 2.) Among other provisions, the parties agreed that the final purchase price for all membership units would be calculated by multiplying the amount of MAC's Qualified Recurring Monthly Revenue ("QRMR") by 48.75. (*Id.* at 2–3.) The Agreement defined QRMR, in part, as "the sum to be derived by [MAC] from all charges which would be payable to [MAC] by its customers with accounts under contract for alarm monitoring services." (*Id.* at 3.) The Agreement also set forth several provisions governing the adjustment of the final purchase price after closing to reflect changes in the number of existing accounts and valuation of the company.

The central dispute in this case stems from the November 2018 Camp Fire, which occurred in Northern California and affected several of Mac's accounts prior to closing, apparently unbeknown to Vyanet. The parties dispute whether Defendants adequately updated MAC's books and records to account for the cancellation or inactivation of Camp Fire affected accounts and whether Vyanet had sufficient information to request a purchase price adjustment in the timeline set forth by the Agreement to reflect any loss of these accounts. After the parties could not agree on a final purchase price adjustment, Vyanet filed the instant lawsuit asserting claims for breach of contract, false representation, fraudulent nondisclosure or concealment, and, in the alternative, unjust enrichment. (Doc. # 24.)

Vyanet endorsed Tracy Jones and Byron Warner, respectively the President and Chief Financial Officer of Vyanet, as non-retained expert witnesses "who may provide testimony that is a combination of fact and opinion." (Doc. # 86-2 at 3.) In the instant motion, Defendants seek to exclude Mr. Jones's and Mr. Warner's testimony under Federal Rule of Evidence 702 on the basis that they are not qualified to offer expert opinions regarding "industry customs and practices" relating to the calculation of QRMR, the interpretation and performance of contractual purchase price adjustment provisions, and disclosure requirements under acquisition agreements in the alarm monitoring industry. (Doc. # 86 at 4–7.) In addition, Defendants move to exclude Mr. Jones's and Mr. Warner's expert testimony relating to a document called the 12-Month Reconciliation Spreadsheet ("Reconciliation Spreadsheet"), which Vyanet prepared to illustrate cancelled accounts and calculate MAC's adjusted QRMR when seeking a purchase price adjustment from Defendants in 2020. *See* (Doc. # 97-1 at 1.) Defendants argue that the Reconciliation Spreadsheet should be excluded because it is based upon inaccurate data, lacks support, and is not reliable. (Doc. # 86 at 7–14.)

## II.   LEGAL STANDARDS

Federal Rules of Evidence 701 and 702 set forth different requirements for the admission of lay and expert opinions, respectively. Rule 701 provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

3

>   (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. Under Rule 701, lay witnesses may offer "observations [that] are common enough and require . . . a limited amount of expertise, if any." *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011) (alterations in original) (quoting *United States v. VonWillie*, 59 F.3d 922, 929 (9th Cir. 1995)).

Expert testimony, meanwhile, is governed by Federal Rule of Evidence 702. Rule 702 provides that a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" may testify if:

>   (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
>   (b) the testimony is based on sufficient facts or data;
>
>   (c) the testimony is the product of reliable principles and methods; and
>
>   (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The trial court acts as a "gatekeeper" by reviewing a proffered expert opinion for relevance pursuant to Federal Rule of Evidence 401 and reliability pursuant to Federal Rule of Evidence 702. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589–95 (1993). The proponent of the expert must demonstrate by a preponderance of the evidence that the expert's testimony and opinion are admissible. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). This Court has discretion to evaluate

whether an expert is helpful, qualified, and reliable under Rule 702. *See Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

In deciding whether expert testimony is admissible, the Court must make multiple determinations. First, it must determine whether the expert is qualified "by knowledge, skill, experience, training, or education" to render an opinion. *Nacchio*, 555 F.3d at 1241 (quoting Fed. R. Evid. 702). Second, if the expert is sufficiently qualified, the Court must determine whether the proposed testimony is sufficiently "relevant to the task at hand" such that it "logically advances a material aspect of the case." *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884, 884 n.2 (10th Cir. 2005). "Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions." *Robinson v. Mo. Pac. R.R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994) (internal quotation marks omitted). Third, the Court examines whether the expert's opinion "has 'a reliable basis in the knowledge and experience of his [or her] discipline.'" *Norris*, 397 F.3d at 884 (alteration in original) (quoting *Daubert*, 509 U.S. at 592). In determining reliability, the Court must decide "whether the reasoning or methodology underlying the testimony is scientifically valid." *Id.* (quoting *Daubert*, 509 U.S. at 592–93).

Generally, "rejection of expert testimony is the exception rather than the rule." *Nacchio*, 519 F.3d 1140, 1154 (10th Cir. 2008), *vacated in part on rehearing en banc*, 555 F.3d 1234 (10th Cir. 2009); *see also* Fed. R. Evid. 702, advisory committee's notes to 2000 amendments. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means

of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The "touchstone of admissibility of expert testimony is its helpfulness to the trier of fact." *Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002).

### III.   DISCUSSION

Defendants seek to exclude several aspects of Mr. Jones's and Mr. Warner's testimony as inadmissible expert opinions pursuant to Rule 702. Having carefully reviewed the Motion (Doc. # 86), Vyanet's Response (Doc. # 97), Vyanet's Expert Disclosures (Doc. # 86-2 at 2–11), the record in this case, and applicable law, the Court is unconvinced that the challenged testimony falls within the ambit of inadmissible expert testimony under Rule 702. To the contrary, the Court finds that the majority of Defendants' objections address testimony that is admissible as lay witness testimony under Rule 701. The Court will first address Defendants' arguments regarding Mr. Jones's and Mr. Warner's qualifications to offer testimony on industry customs and practices and will then turn to the parties' dispute regarding the Reconciliation Spreadsheet.

### A.   QUALIFICATIONS TO TESTIFY TO INDUSTRY CUSTOMS AND PRACTICES

Defendants argue that Mr. Jones and Mr. Warner are not qualified to offer expert opinions on the "course of dealing or industry customs and practices concerning acquisition transactions in the monitoring industry." (Doc. # 86 at 4.) They specifically challenge whether Mr. Jones and Mr. Warner are qualified to offer testimony on:

- industry customs and practices generally concerning acquisitions in the alarm monitoring industry;

- whether parties typically insist on strict compliance with time limitations in purchase price adjustment provisions; and
- industry practice regarding unexpected or surprising events during acquisitions.

(*Id.*)

As an initial matter, the Court notes that Mr. Jones and Mr. Warner are critical fact witnesses and that a significant amount of information relevant to the above topics and the dispute in this case is within their personal knowledge. Mr. Jones, as the President of Vyanet, and Mr. Warner, as Chief Financial Officer, were substantially involved in the negotiation process with Defendants for the acquisition of MAC. Moreover, both witnesses have extensive experience with similar acquisitions on behalf of Vyanet. Mr. Jones has over 30 years of experience with acquisition transactions in the monitoring industry and has been involved in at least 40 such transactions with Vyanet. (Doc. # 64-1 at 226.) For his part, Mr. Warner has been involved with 15 to 25 acquisitions over approximately 13 years at Vyanet. (*Id.* at 320.) Both Mr. Jones and Mr. Warner were previously involved with an acquisition transaction with facts similar to the instant case, where accounts were affected by a wildfire and the two companies engaged in additional negotiation to account for the loss. (*Id.* at 240, 326.)

The Court finds that it would not be "expert" testimony for either Mr. Jones or Mr. Warner to testify to their personal experience involving acquisitions at Vyanet. Such testimony is not "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Rather, this testimony constitutes lay

witness testimony based on "the particularized knowledge that the witness has by virtue of his or her position in the business." Fed. R. Evid. 701, advisory committee notes to 2000 amendments; see also Anzora v. Lezama, No. 17-cv-01983-DDD-NRN, 2019 WL 3334685, at *7 (D. Colo. July 24, 2019) ("Rule 701 opinion testimony results from a process of reasoning familiar in everyday life or knowledge that the witness has by virtue of his or her position within a particular field, while Rule 702 opinion testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" (quoting James River, 658 F.3d at 1214)). Mr. Jones's and Mr. Warner's testimony regarding their personal experience with how Vyanet and other parties have addressed strict compliance with time limitations for purchase price adjustments or handled surprising or unexpecting events similarly constitutes testimony within their personal knowledge that is admissible under Rule 701. Critically, any opinion that Mr. Jones or Mr. Warner may have on time limitations or surprising or unexpected events is based on their personal familiarity with prior transactions and the facts of this case, rather than a reliably applied methodology that utilizes technical or specialized knowledge. See, e.g., Raiford v. Nat'l Hills Exch., LLC, No. 1:11-cv-152, 2016 WL 2889038, at *5 (S.D. Ga. May 17, 2016) ("To the extent [a witness's] opinions exist, they are based on his perspective as a key figure in this case and do not involve the application of 'scientific, technical, or other specialized knowledge.'" (quoting Fed. R. Evid. 702(a) (citation omitted)).

After reviewing Vyanet's expert disclosures and Defendants' Motion, it is unclear to the Court what, if any, of Mr. Jones's and Mr. Warner's proposed opinion testimony

may implicate "matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." *James River*, 658 F.3d at 1214. Moreover, Defendants challenge only Mr. Jones's and Mr. Warner's *qualifications* as expert witnesses; they do not address any of the other factors of the *Daubert* analysis. Based on Mr. Warner's and Mr. Jones's extensive experience with acquisitions in the monitoring industry, the Court is likely to find that they are well qualified to opine on the customs and practices of that industry. However, the Court finds that it is not appropriate at this time to rule on the admissibility of any of their purported expert testimony and will reserve ruling if and until the issue arises at trial.

**B.     THE RECONCILIATION SPREADSHEET**

Next, Defendants challenge Mr. Jones's and Mr. Warner's expert testimony regarding the Reconciliation Spreadsheet, which was prepared by Vyanet to resolve differences over the purchase price with Defendants and was included as an attachment to an October 2020 letter from Vyanet's counsel to Defendants. *See* (Doc. # 97-1 at 1.) Specifically, Defendants object that the spreadsheet is not based on reliable methodology and that it has several inconsistencies and errors. (Doc. # 86 at 8.). Again, the Court disagrees with Defendants that any of the proposed testimony involving the Reconciliation Spreadsheet constitutes inadmissible expert testimony.

The Reconciliation Spreadsheet is not an expert report, such as a damages report prepared by an expert for litigation. It is a document that is part of the factual record of this case and which is highly relevant to the parties' dispute over the purchase price adjustment that Vyanet requested in 2020. Moreover, Mr. Jones and Mr. Warner

are both key fact witnesses, and it is evident from the record that a significant amount of information relating to the Reconciliation Spreadsheet is within their personal knowledge. For example, Mr. Warner, as Vyanet's Chief Financial Officer, has personal knowledge of the creation of the Reconciliation Spreadsheet, the process used to create the spreadsheet and calculate QRMR, and the source data used to create the spreadsheet which was pulled by Vyanet employees. (Doc. # 97-1 at 2.)

It is well established that an officer of a business may offer testimony regarding damages that is within his personal knowledge without being qualified as an expert. *See* Fed. R. Evid. 701, advisory committee notes to 2000 amendments (observing that "most courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert"); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) (no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business). The Tenth Circuit has specifically illustrated the difference between Rule 701 lay opinion testimony and Rule 702 expert testimony in the context of damages calculations. *See James River*, 658 F.3d at 1214. In *Bryant v. Farmers Insurance Exchange*, 432 F.3d 1114, 1124 (10th Cir. 2005), the court held that a witness should have been permitted under Rule 701 to testify to elementary mathematical operations, such as "[t]aking a simple average of 103 numbers," because a "mathematical operation well within the ability of anyone with a grade-school education is . . . more aptly characterized as a lay opinion." The court reasoned that

although the calculation was "technically a statistical determination," it was "not so complex a task that litigants need to hire experts in order to deem the evidence trustworthy." *Id.* On the other hand, the Tenth Circuit has held that a CEO's testimony about his business's lost profits was inadmissible under Rule 701 because his results were based on more sophisticated economic models, including "moving averages, compounded growth rates, and S-curves." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 929 (10th Cir. 2004).

In Mr. Warner's Declaration, he states that the Reconciliation Spreadsheet "compares the estimated purchase price Vyanet paid to acquire MAC . . . with the purchase price it should have been paid." (Doc. # 97-1 at 2.) He explains:

> The process used to prepare the Reconciliation Spreadsheet is the same process used for calculating the purchase price in all of Vyanet's acquisition transactions. It begins with calculating the gross recurring monthly revenue ("RMR") from a list of accounts, and then determining eligible or qualified RMR by making deductions for items that should not be included such as accounts that are more than 90 days overdue and pass-through charges. The eligible or qualified RMR is then multiplied by the multiplier specified in the acquisition agreement to determine the final purchase price.

(*Id.*) In the instant case, the Agreement sets the relevant multiplier at 48.75. (Doc. # 64-1 at 2–3.) Based on Mr. Warner's description, the Court finds that the calculations within the Reconciliation Spreadsheet are not so sophisticated as to require the specialized knowledge of an expert. The Court is satisfied that the described multiplication to calculate QRMR, which is also set forth within the Agreement, is well within the "elementary mathematical operations" that may be testified to by a lay witness. *See James River*, 658 F.3d at 1214; *see also United States v. Powers*, 578 F. App'x 763,

11

774 (10th Cir. 2014) (unpublished) ("The calculation of debt-to-income ratios is the kind of basic math that we have permitted lay witnesses to include in their testimony.").

Defendants also raise several arguments as to the "reliability" of the Reconciliation Spreadsheet, including asserting that (1) the source data lacks foundation; (2) several categories of calculations regarding different types of accounts are incorrect or inaccurate; (3) categories of data are double-counted in a way that is prejudicial or overstates the QRMR for accounts cancelled from the Camp Fire; (4) the attrition guaranty is not calculated pursuant to the Agreement; and (5) it improperly includes liabilities and obligations incurred in the ordinary course of business or incurred after closing. (Doc. # 86 at 7–14.) Defendants cite to Federal Rule of Evidence 403 and assert that the "use of the Spreadsheet and any testimony related thereto would confuse the jury beyond the point of repair through lengthy cross-examination on the many inaccurate and unsupported entries therein." (*Id.* at 14.) The Court disagrees. The Reconciliation Spreadsheet is highly relevant, and the exclusion of relevant evidence under Rule 403 "is an extraordinary remedy to be used sparingly." *K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1155 (10th Cir. 1985). The Court does not believe that Defendants' cross examination regarding the Reconciliation Spreadsheet will be so lengthy or confusing as to confuse the jury "beyond the point of repair." Defendants' motion to exclude the Reconciliation Spreadsheet and any related testimony is therefore denied.

## IV.     CONCLUSION

For the foregoing reasons, the Court ORDERS that Defendants' Rule 702 Motion to Exclude Testimony and Opinions of Tracy Jones and Byron Warner (Doc. # 86) is DENIED.

DATED:  May 5, 2023

BY THE COURT:

CHRISTINE M. ARGUELLO
Senior United States District Judge